UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20077-TP-UNGARO/SIMONTON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JORGE DEL SOL-HERNANDEZ,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Petition for Warrant or Summons for Offender Under Supervision, in which the probation officer seeks revocation of the Defendant's term of supervised release (DE # 2). This matter was referred to the undersigned by the Honorable Ursula Ungaro, United States District Judge, to take all necessary and proper action as required by law, including but not limited to an evidentiary hearing, with respect to whether or not the defendant's supervised release/probation should be revoked (DE # 14). Following an evidentiary hearing, and for the reasons stated below, it is recommended that the defendant's supervised release be revoked.

## BACKGROUND

On May 25, 2010, District Judge Ungaro authorized the issuance of an arrest warrant pursuant to a Petition for Warrant or Summons for Offender Under Supervision (DE # 2). The petition sets forth two violations as follows:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1. | Violation of Mandatory Condition, by failing to refrain from violation of the law. On or about May 15, 2010, in Miami-Dade County, Florida, the defendant committed Aggravated |

Battery, contrary to Florida Statute 784.045(1)(a).

2.      <u>Violation of Mandatory Condition</u>, by failing to refrain from violation of the law.  On or about May 15, 2010, in Miami-Dade County, Florida, the defendant committed Resisting Arrest without Violence, contrary to Florida Statute 843.02.

The defendant initially appeared in Court on June 8, 2010 (DE # 4).  The Office of the Public Defender was assigned to represent the Defendant, a bond was set, and a probable cause hearing was set for June 22, 2010 (DE # 5).

Since the Defendant did not post his bond, the probable cause hearing was held before Magistrate Judge White on June 22, 2010 (DE # 9).  At that hearing, Magistrate Judge White found that probable cause had been established only as to the second violation.  At a status conference held before the undersigned Magistrate Judge on July 16, 2010, the parties agreed that, pursuant to Fed. R. Crim. P. 32.1(b)(1)(C), since the Court did not find probable cause as to Violation # 1, that violation must be dismissed, without prejudice.  The government announced at that status conference, as well as at the commencement of the evidentiary hearing before the undersigned Magistrate Judge, that it did not intend to proceed at the present time with Violation # 1, and requested that Violation # 1 be dismissed without prejudice.  Therefore, the undersigned recommends that Violation # 1 be dismissed without prejudice.

<u>THE EVIDENTIARY HEARING REGARDING VIOLATION # 2</u>

I.      <u>Introduction</u>

An evidentiary hearing with respect to Violation # 2 was held on July 30, 2010.  At that hearing, the Government called Miami-Dade Police Officers Alejandro Giraldo and Louis Rivera as witnesses in its case-in-chief.  The Defendant testified on his own behalf; and, the Government called Miami-Dade Police Officer Christopher Fernandez as

-2-

a rebuttal witness.  The parties presented closing argument, with both sides recognizing that the primary issue for the Court was a credibility determination:  If the Court believed the testimony of the Defendant, then he was not guilty of the alleged violation; if the Court believed the testimony of the police officers, then the Government had proven its case by a preponderance of the evidence.  At the conclusion of the hearing, the undersigned announced her credibility determination in favor of the police, and explained the basis for this determination.  Specifically, the testimony of the Defendant regarding the events did not make sense in terms of the undisputed circumstances which led to his arrest, as well as the direct contradiction by the three testifying officers.  Morever, this determination was based upon the demeanor of the officers, and the internal consistency of their testimony on all major points, as contrasted with the demeanor of the Defendant, his interest in the outcome of this case, and the far-fetched nature of his testimony.  The undersigned specifically ruled that the Government had established each of the elements of the underlying offense which forms the basis for the alleged violation, and therefore stated that she was recommending that the Defendants term of supervised release be revoked.  This Report and Recommendation incorporates by reference those findings and conclusions, and sets them forth below.

II.    Findings of Fact

On May 15, 2010, the Miami-Dade Police Department ("MDPD") dispatcher issued a "Be On the Lookout" or BOLO call over the radio, stating that the subject of the BOLO was wanted in connection with a stabbing that had occurred at S.W. 280th Street and 139th Avenue.  That area is residential, and has a canal separating two townhouse complexes.  The complex on the west side of the canal is known as Seapines, and the complex on the east side of the canal is known as Waterside. The subject was described

as an older white male, wearing a black T-shirt and blue jean shorts.  Officer Alejandro Giraldo responded to this call and arrived at the Seapines complex within a minute or two.  Officer Giraldo drove a marked police car, and was accompanied by Officer Bustamonte.   At the same time, Officers Hernandez and Rivera went to the Waterside complex on the other side of the canal.

When they entered the Seapines complex, Officers Giraldo and Bustamonte saw a man who matched the description given in the BOLO exiting from a house, and walking toward the police car.  This man was later identified as Defendant Jorge del Sol Hernandez.  Officer Giraldo noticed that the Defendant's hands were bloody.  The officers left the police car, and Officer Bustamonte loudly commanded the Defendant to stop.  Officer Bustamonte was approximately 15 feet from the Defendant and was facing him at the time she gave this command.  As soon as he was asked to stop, the Defendant turned around and ran back inside the house.  The undersigned finds that the Defendant heard this command and deliberately disregarded it in an attempt to evade the police.

Officer Bustamonte followed the Defendant inside the house, and Officer Giraldo went behind the row of townhouses and saw the Defendant jump over the fence that separated the back of his house from the canal which divided the Seapines and Waterside complexes.  At that time, Officer Rivera heard Officer Bustamonte report over the radio that the subject was fleeing the area and heading toward the canal.  Officers Rivera and Hernandez parked their car, and saw the Defendant climb over the fence.

Officer Giraldo continued to pursue the Defendant by climbing over the fence.  As he was doing so, he saw the Defendant run south along the canal, and also saw Officers Hernandez and Rivera on the other side of the canal.  He heard Officer Rivera yell to the

Defendant, "Police.  Stop. Stop."  The Defendant stopped and hesitated for a moment, looked at Officer Rivera, looked around toward a fence, and then continued to run.  It appeared to Officer Rivera that the Defendant was going to try to jump back over the fence since the Defendant ran up to the fence and put his hands on it.  Officer Rivera continued to command the Defendant to stop.  The Defendant then turned around, walked back toward the canal, sat down on the grass, and stopped.  The undersigned finds that the Defendant deliberately disregarded the initial commands to stop, and obeyed those commands only when he realized that further flight would be futile.

Officer Giraldo finished climbing over the fence, and saw that the Defendant had completely stopped.  At that point, Officer Giraldo handcuffed the Defendant and took him into custody.  The Defendant had blood on his clothes as well as his hands, but the Defendant himself did not appear to be injured.  Officers Rivera and Hernandez then went to assist Officer Giraldo at the Seapines complex, and also noticed blood on the Defendant's hands and clothing.

In making the above Findings of Fact, the undersigned specifically rejects the contrary testimony of the Defendant, which is summarized as follows:  The Defendant testified that he was in his backyard with his family before he encountered the police.  He denied that he had seen the police outside the front of his house, or that he had been leaving his house when he saw the police.  He denied that the police had commanded him to stop at any time when he was at his house.  The Defendant testified that there is a gate in the fence behind his house, and that the gate was open and his small dog went out through that gate.  The Defendant testified that he followed the dog outside the gate, and chased the dog to try to catch him.  The Defendant denied that he had jumped over the fence.  While he was chasing the dog, he saw the police across the canal, and heard

the police order him to stop.  The Defendant denied running from the police, and testified that he stopped in response to their command.  Another police officer on the same side of the canal as the Defendant then handcuffed and arrested him.  The Defendant did not know what happened to the dog, but assumed that his family had retrieved the dog.  The Defendant denied that he had blood on his hands or clothing.

As stated above, the Defendant's testimony is directly contrary to the testimony of the three officers at the evidentiary hearing, and does not make sense in light of the circumstances of this case.  At the outset, it does not make sense that these officers would even know that the Defendant was in the back of his house if they had not first seen him in front of his house.  In addition, it does not make sense that they would target and pursue a man who was following his dog outside the gate in his back fence, when there was a report of a stabbing suspect in the vicinity.  It also does not make sense that the officers would fabricate the existence of blood on the Defendant and his clothing, a fact which is easily verifiable.

As recognized by both parties, the stark contrast between the testimony of the Defendant and the testimony of the officers requires the Court to make a credibility determination.  In view of the demeanor of all the witnesses, the consistency of the testimony of the police officers on all major points, and the incredible nature of the events related by the Defendant, the undersigned credits the testimony of the officers and disbelieves the testimony of the Defendant.

III.    Conclusions of Law

In the presently pending Petition, the Defendant is charged with violating the conditions of his supervised release by violating the law, in that on or about May 15, 2010, in Miami-Dade County, Florida, the defendant committed Resisting Arrest without

Violence, contrary to Florida Statute 843.02.  This statute provides, in pertinent part,

> Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . .

The Florida Supreme Court has established that the elements of this offense are "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty."  *C.E.L. v. State of Florida*, 24 So. 3d 1181, 1185-86 (Fla. 2009), *cert. denied* 130 S. Ct. 3290 (2010).  In the context of a defendant who is fleeing from an officer, the Florida Supreme Court has provided the following guidance:

> [W]e note that as a general rule, flight, standing alone, is insufficient to form the basis of a resisting without violence charge.  Therefore, the act of flight alone is not a criminal offense.  To be guilty of unlawfully resisting an officer, an individual who flees must know of the officer's intent to detain him, and the officer must be justified in making the stop at the point when the command to stop is issued.  A stop is justified when an officer observes facts giving rise to a reasonable and well-founded suspicion that criminal activity has occurred or is about to occur.  In turn, whether an officer's well-founded suspicion is reasonable is determined by the totality of the circumstances that existed at the time of the investigatory stop and is based solely on facts known to the officer before the stop.

*C.E.L.*, 24 So. 3d at 1186 (citations omitted).  The Florida Supreme Court also pointed out that under *Illinois v. Wardlow*, 528 U.S. 119 (2000), unprovoked flight from law enforcement officers could provide a reasonable suspicion of criminal activity which would support an obstruction charge, even if reasonable suspicion was lacking prior to the flight.

In the case at bar, the undersigned concludes that the police were acting in the lawful execution of a legal duty both at the time when Officer Bustamonte initially

-7-

ordered the Defendant to stop when she and Officer Giraldo saw him outside the front of his house; and, when Officer Rivera ordered the Defendant to stop as he was fleeing from Officer Giraldo along the canal behind the Defendant's house.  At least reasonable suspicion to believe that the Defendant had been involved in criminal activity was established at the outset by the fact that he matched the description of the BOLO issued regarding the stabbing incident, he was in the vicinity immediately thereafter, and that he had blood on his hands.  Moreover, that suspicion was increased by the nature and extent of his flight from the police after he refused to obey the command to stop.   Thus, the first element of this offense is established by a preponderance of the evidence.

In addition, the undersigned concludes that the second element of the offense was established by a preponderance of the evidence.  By fleeing from the police, and causing a chase to ensue, the Defendant resisted the lawful investigation being conducted by the police, and obstructed that investigation.  *C.E.L.*, 24 So. 3d at 1189 ("C.E.L.'s flight in a high-crime area created the reasonable suspicion sufficient to warrant a lawful investigative stop.  C.E.L.'s continued flight in knowing defiance of the officer's lawful order to stop constituted the offense of obstructing without violence pursuant to section 843.02").

<u>RECOMMENDATION</u>

Based upon the foregoing Findings of Fact and Conclusions of Law, it is hereby

**RECOMMENDED** that the Court revoke the defendant's supervised release based on the undersigned's findings that the government proved violation number two. As agreed by the parties at the status and scheduling conference, as well as at the evidentiary hearing, the undersigned recommends that violation number one be

dismissed without prejudice based on Magistrate Judge White's determination that it was not supported by probable cause, and the government's election not to proceed with that violation at the present time.

The parties have fourteen days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Court Judge.  Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  *LoConte v. Dugger*, 847 F. 2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F. 2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida on September 20, 2010.


*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**


Copies provided via CM/ECF to:
United States District Judge Ursula Ungaro
All counsel of record